The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. Welcome. We are happy to have you here with us today and we are very pleased to be joined by our good colleague, Judge Bell from North Carolina. We will hear argument first in Yagi v. Hilgartner and Mr. DeVito, when you're ready. Good morning, Your Honor. May it please the Court. We're here today to construe a section of the United States Bankruptcy Code, Section 11 U.S.C. 523-A-6. The code section provides that debts which are due to willful and malicious injury are not dischargeable. And I think that the primary thing that I would ask the Court to focus on in trying to determine whether or not the debt at issue in this case is dischargeable, is to focus first of all on what is a settlement agreement with respect to a personal injury case. I think there are two ways to look at it. One is you can look at it as if it represents a personal injury judgment in a tort suit. In that instance, you'd have the amount of the judgment, you'd have interest at the statutory rate of 6%, but you would not have attorney's fees, you would not have late fees, and you certainly wouldn't have penalties. Another way to look at it is as a contract. And in a contract, suit on a note or any type of loan instrument, you'd have the principal amount. You'd usually have a provision for attorney's fees in case it had to be enforced. You could have provisions for late fees, and you could have interest on the debt. And the reason it's important is in bankruptcy law, there's a constant thread that runs through all of it, and that is very simply that contract debts are dischargeable under the Bankruptcy Code, whereas your average personal injury judgment, say one for negligence, is certainly dischargeable. So the question becomes how does the court look at the settlement agreement that was reached in this case, and then how does the court look at the various parts of the claim that are being made by Ms. Yagi? And I think the first thing that I would point out to the court is that certain parts of Ms. Yagi's claim exist only because of the contract that was signed. Counsel, if we could just maybe break it down, and maybe that's what you were doing. But at least for the $415,000, doesn't Archer pretty much tell us that the fact that we're reduced to a settlement agreement, and I realize it's not exactly the same, but basically says the novation thing doesn't work. That's not a bar to saying it's not dischargeable. So then I think maybe to your point, how do you decide whether it is? And you say there's two ways to look at it, but in this case, the district court looked at it. I think I'm at the district court level. Maybe it's the bankruptcy court. But they looked at the record, and they said this settlement agreement is different than a lot of settlement agreements. I used to do that. We almost always said no admission of liability. Maybe you can't tell a whole lot from that. But this one has admissions, and the court cited that as a basis for saying we can tell this is a malicious injury because the admissions within it. So why is that, at least on the $415,000, the actual content of this settlement agreement tell us where we are? I understand the point you're making. I simply would point out a couple of things, which may amount to a distinction without a difference. But first of all, Archer was decided under Section 11 U.S.C. Section 523A2, which deals with fraud. And the other point I would simply make is I don't think any court has ever directly addressed the issue under 11 U.S.C. Section 523A6. You could take a strict construction point of view, which is that if it's not spelled out in the code, it's dischargeable. That's a theory that runs throughout bankruptcy law, too, is that any doubts about whether or not debt is dischargeable should ordinarily be construed in favor of the debtor because the purpose of the bankruptcy code is to give people a fresh start. So if the court wants to take a strict construction of the statutory section, there's nothing in there that says that settlement agreements are dischargeable. So I think if you take it as it is, just looking at the code section without case law at all, and just ask yourself, does the code section permit it? It's just simply not in the code section. It doesn't say consent decrees either, and Archer tells us that that counts. So it seems to me you're having to draw a distinction between a consent decree and a settlement agreement. There's not a whole lot of daylight between those. And then I get your point on the fraud section versus malicious injury. But it's hard for me to principally understand how those would be different. Well, one other thing I'd say is that if you look at personal injury law, willful and malicious injury usually deals with punitive damages. And that's certainly nothing that's involved here either. I think the problem is that there was never a personal injury lawsuit brought, and there was never any distinction made between what could be considered compensatory damages and what could be considered punitive damages. I guess my basic point is just that I think that since you're riding on a blank slate at this point, no court's construed 11 U.S.C. Section 52836. I think if the court wants to read in the fact that it would encompass a settlement agreement, you can. But it's not there. Do you see any meaningful distinction between a pre-litigation settlement and a post-litigation settlement for these purposes? Yeah. That was something I really thought about because I think the personal injury lawsuit sort of defines everything. You have a complaint. You have a listing of what they're asking for for compensatory damages. You have a listing of what they're asking for for punitive damages. In fact, if this had been reduced to a judgment, I would have made the argument that if there's a portion for compensatory damages, that would have been dischargeable, and it would only be the punitive damages that would survive if they would under this code section. So I think you're right. I think there is a distinction there. No, I wasn't saying there was one. I was asking whether you thought there was one. Oh, well, I certainly do. I guess can I ask you why? Because under the statute, we're trying to figure out is this principal debt or the underlying tort. And I guess given the nature of this particular settlement agreement, which makes perfectly clear that it was entered into to avoid the time and expense of litigation, and in light of these particular willful and malicious assaults, we know what it was for. Sometimes I could imagine you would need a lawsuit so that you could tell what the debt was for, but this settlement agreement spells it out. So why does it matter? Well, I guess I'd come back to my original point, too, which is just once again, I think if you're talking about willful and malicious injury, I guess the question was, you know, are all her damages in this case all due to willful and malicious conduct? Once again, I think it comes down to construction of the section. Are you appealing the part of, I think it was, I can't remember also now, district court, bankruptcy court, but are you appealing the finding that this was willful and malicious conduct? Because I didn't see that in your brief. No. I mean, that was a factual determination that was made by the court. You could always argue with it, but I think that, no. Counsel, could I switch gears a little bit from the broad principle to the interest and attorney's fees portion, your argument about that? And I'm not asking about allowability. I'm asking about dischargeability now. I'll ask your colleague this, but it looks like most of the cases that I've seen, when interest and attorney's fees, whether it's the statutory contract approach or whether it's the status-dependent approach, all deal with fees or interest that were incurred in obtaining either a judgment or a settlement. And here we have attorney's fees and interest that are part, I think, of enforcement efforts. And first of all, are you aware of any cases that address that situation? Fees and interest from an enforcement mechanism as opposed to fees and interest that were incurred or obtained in obtaining either a judgment or a settlement. Yes, Your Honor. What I was going to say is the way I look at all the rest of it is that late fees, penalties, interest, attorney's fees, that's all a creature of contract. You know, they would not exist if there were not the settlement agreement, if there were not a contract which gives Ms. Yagi the right to claim them. And I think they're all dischargeable for that reason. And I think the case that I rely on is the case of Brackett versus Brackett, which is case number 51BR987. It's a decision of the D.C. District Court of Colorado in 1985. The court said this litigation is not a suit on a note. It's a complaint to determine the dischargeability of a debt. And as there is no provision in the Bankruptcy Code for the recovery of attorney's fees in the dischargeability suit, none can be allowed to the plaintiff here. And what I'm basically saying, you know, for example, with respect to interest, I think they have two problems. One is it's not an allowable claim under 11 U.S.C. 502. There's no provision in there that allows for interest. And then secondly, as to dischargeability, it has to be a creature of contract because it was created by the contract. There was never a tort judgment of any kind. So the only way that the late fees, penalties, and interest can be created is by the contract. And if contract debts are dischargeable. Counsel, can I just, I want to make sure I understand. How is that different from the principle? Because your main argument is exactly that argument as to the principle. It's owed, if at all, only as a result of this contract. So how is that different from the interest and the late payment? Yeah, because the Bankruptcy Court picked up on this too, the argument I'm making, which is that you can attribute, I guess, her claim for, you know, pain and suffering, medical bills, whatever it is, to whatever action my client took in physically injuring her. But you can't say the same thing about the, you know, the contract provisions for, you know, interest, attorneys' fees, late penalties. Those were all created. What the Bankruptcy Court said, and I think this is fundamental, is those things did not exist at the time of the personal injury. Late fees, penalties, and interest only came into existence once the contract was drawn up. So I think that's the... That might be fair, but, you know, they did... Is the issue whether they existed at the time of the personal injury, you know, by virtue of a statute or a contract, which I think you're right, the answer would be no. If you sued, you know, for, you know, assault, you wouldn't be able to get attorney's fees and probably prejudge of an interest since it's not as uncertain. But, you know, there's case law that says when you incur fees, you know, in connection with prosecuting a malicious injury or a fraudulent, you know, claim, you do get those. This seems a step removed from that because these aren't fees used to prosecute the recovery of that malicious injury. They are fees that, once you've agreed on an amount, then are enforcement mechanisms. Judge Harris is kind of right, you know, maybe completely right, that they're all, you know, but for causation. But I thought what you might say is if you look at the attorney's fees provision in the contract, it's a mutual thing. There's fees going both ways. So it's not exactly, you know, attributable to the fraud, perhaps. Maybe it's more clearly an enforcement thing. Well, to address attorney's fees directly, I think, first of all, if you analogize it, once again, to a personal injury lawsuit, you really don't get attorney's fees. That's the American rule of law. The only thing that creates a claim for attorney's fees is the contract, which is a deviation from the American rule of law. And a further problem that I don't think either court, either the bankruptcy court or the U.S. District Court of Justice, there's attorney's fees before the bankruptcy and then there's attorney's fees during the bankruptcy. And if you look at before, I once again fall back on the argument I just made. They were created by the contract. They didn't exist at the time of the personal injury, at the time of the malicious and willful conduct. They didn't exist. They only came into being at the time they wrote the contract. But there are a lot of cases that reject that, either in the fraud case. Even though you may be right, you wouldn't have been entitled to them had you litigated. There are cases that, you know, maybe not our circuit, but that talk about if there are fees incurred in getting to a judgment or a settlement or a consent decree, they're sufficiently connected. I just don't think any of those courts ever looked at the point I was trying to make. And I could stand corrected, but I don't think anybody's ever – I read all the cases that the U.S. District Courts cited and I just don't think any of them deal with that fundamental issue as to where do the damages come from here. Are they coming from the willful malicious conduct or are they coming from the contract? I never saw that. And so I think it's still a viable point. Can I ask you a question about the Supreme Court's decision? I think it's the Cohen case where they said, you know, the punitive damages arise from the tort, even though they're not compensation for the tort. I thought the court there did define resulting from the connection that was required very generously so that it was enough if the debt was related to the underlying tort. Am I misremembering that? No. And my time is up, so if you want – Just finish your question. My question would be why aren't these enforcement mechanism amounts related to the underlying tort? Once again, I just have to fall back on what I keep saying, and I'm sorry if I'm repeating myself, but I just see the fundamental distinction between personal injury type of damages and things which are clearly just created by contract. You know, interest, attorney's fees, late penalties. Certainly none of those exist simply as a result of a willful malicious injury. My time is up, but thank you. Thank you. You've got some time for rebuttal, I think. Good morning, Your Honor. May it please the Court. Good morning, Your Honor. My name is Alfredo Acin, Counsel for the – I believe – and Plaintiff Yasuko Yagi. I know the Court already started digging into the question of non-dischargeability of the principal amount. I believe that's well settled under Archer. I'm happy to address that if the Court would like to hear that. Just real – Archer settles that a settlement – that a consent decree and perhaps a settlement, if there's no material difference, doesn't bar the claim to be non-dischargeable. Do you agree that it's – it's then incumbent on the Bankruptcy Court to do whatever fact-finding needs to be done to discern whether the – he or settlement agreement was, you know, caused by that. In other words, if you had had a release that said no admissions of liability, and it had been from some amount that might be called a nuisance amount, we might have a different case. I mean, the Bankruptcy Court's got to dig in and figure it out. Do you agree with that? Yes, Your Honor. The Bankruptcy Court needs to figure out whether there was malicious and willful intentional harm. And I think here the Bankruptcy Court did cite a complaint, which might be questionable because the complaint's just a complaint, but it did cite the settlement agreement, which has some admissions, so probably facts support that. Well, Your Honor, not only the settlement agreement, but prior to the settlement agreement, Mr. Hilgartner also signed another admission of liability. Both of those are cited in there. So it kind of all kept getting rolled into it. But it's my understanding that Mr. DeVita is not contesting the findings of fact of the court or anything. We're just arguing over the conclusions of law. What about the interest in attorney's fees? Do you have a case where we have a situation like here, not interest in attorney's fees that were either permissive damages under an underlying contract or statute, or that were obtained or incurred in getting a settlement or a judgment, but attorney's fees that are part of an enforcement mechanism after some sort of resolution? Is there a case that I didn't see anything like this? And I concede I did not see anything specifically on point with regard to that. My understanding is the court's asking about the dischargeability of the attorney's fees and interest, and that's correct. I mean, I think our position is that, you know, the district court's analysis of the matter under Cohen pretty much addresses that and then goes into the minority and majority test, both of which, although there's those two tests, the Fourth Circuit kind of has applied both. But under the district court's analysis, the results come out the same in favor of non-dischargeability, basically, because all of that was related to the principle. And I think Cohen's your strongest argument. It seems to arguably talk about debt-for as being interpreted as relating to or arising from, which might be equivalent to but-for. And if you don't have the malicious conduct, you don't have the injury, you don't have the settlement, you don't have the enforcement. And so it seems like that's probably the best argument. And the interesting thing, though, is Cohen allowed for fees and troubles under the statute that was being pursued in the underlying situation. And here we're talking about, you know, again, fees and interest and enforcement mechanism. And the thing that seems different, and maybe it doesn't make a difference, but I'd like to address that, is the fee provision in the settlement agreement was mutual. So, I mean, your client had exposure for fees. And I think the fee agreement said the prevailing party, in any effort to enforce, the prevailing party gets attorney's fees. Does that matter? It seems like that might put us pretty far down the causative chain. Well, Your Honor, I mean, I believe, and yes, I believe it is a neutrally worded provision in the settlement agreement. However, as the Cohen court found and cited to by the district court, once it is established that specific money or property has been obtained by fraud, in that case it was fraud, but that same reasoning has been applied to all of the other 523A categories by several courts. But the court stated, the Cohen court stated, any debt arising therefrom is exempted from discharge. And sort of, and I think that's pretty much the analysis, right? So, we already have the principal amount of this settlement agreement that is already non-dischargeable and arose from the willful and malicious conduct of the debtor. The attorney's fees and interests that are at question right now, they all arose from that same debt. And so then if we apply the, you know, either the statutory or slash contractual basis analysis, you know, the provision to enforce that, you know, those enforcement mechanisms were in there, but those are inextricably tied to that principal debt. So, the statutory contractual view sides in favor of deeming the attorney's fees and interest as non-dischargeable. And similarly, if we look at the status dependent view, it's the same outcome, right? It measures the dischargeability of ancillary fees and costs based on dischargeability of the underlying debt. And since the underlying debt here has already been deemed non-dischargeable, those ancillary debts also are deemed non-dischargeable. So, both views, I think, apply the same outcome in this matter. Would you have a claim for those but for the provisions of the agreement that address that? In this specific situation? Well, what I'm asking is, is your argument based upon the fact that there were provisions providing for this in the settlement agreement? And absent that, you would not have this argument? Well, Your Honor, I think the short answer is yes in this specific scenario. However, as Mr. Hilgartner's counsel is arguing, it seems to be that they view entering into a settlement agreement as wiping away all of this and they seem to be advocating a policy in a way where parties cannot settle any personal injury claims or torts or any of that and have to instead go to court. So, had the parties in this scenario decided, okay, let's agree on settling the case, and then they appear in front of, since the settlement agreement is a District of Columbia governed document, if they had appeared before the D.C. Superior Court and basically by consent stipulated to everything that's in the agreement and it's now a consent order entered by the court, would those enforcement fees and interests then not be part of the judgment that Mr. DeVito is arguing are separate in a part? I believe they would. But the settlement agreement contains, the 415 contains attorney's fees. It contains costs. It contains, yeah, if the 415 is non-dischargeable, I don't see how you're prejudiced. These would be settlement versus litigation. I think whether we consider a policy or not, everyone can debate that, but it might be fair to say it would be odd to disfavor a settlement. But is it really disfavor a settlement when this settlement includes attorney's fees and translation costs and things like that incurred in getting to this settlement? That's all probably, you know, you've got a pretty good argument. That's non-dischargeable. Now we're going to something that no other case that I found has said, which is if you do something that is, you know, enforcement fees, that also is sufficiently connected. Well, and Your Honor, and I believe the District Court also addressed that. However, it's worth noting that in the settlement agreement that the parties entered into, the legal fees and translation costs and everything that are contained as part of that 415 were actually paid up front. So they were already due and paid and moved by the time we get to the bankruptcy and the dischargeability because that had all been paid at the time of, you know, within the first, I think, three months of entering into the settlement agreement. Mr. Hilgartner had paid that. I'd have to review the actual terms. But it was very early, and those were the very first payments. They were to Ms. Yagi's counsel who... Why does that matter? Well, Your Honor, I think it matters only to the extent of, you know, the ultimate decision was, right, we had the 415 as the principle. However, by the time this matter came before the court, that 415 was already, you know, was not what the court ordered was non-dischargeable. Rather, the remaining balance, which Mr. DeVita stipulated at trial, the court's process in getting that. So at trial, the court decided, right, we started at 415. However, there was $189,955 paid prior to the bankruptcy petition and the collection actions. So the actual remaining principle, which is non-dischargeable, is $229,045. And that's really ultimately what the court ended up finding, right, that that's the non-dischargeable principle balance. I mean, I think by the time we got to that, the issue of attorneys' fees, of pre-settled attorneys' fees and interests had already been mooted under the agreement. Does it make any difference to the outcome of this case whether or not paragraph 1G is an acceleration clause? Apparently to Mr. DeVita, it does. I side with the district court's adjudication that basically paragraph 1G actually notes that three missed payments in a row constitute a material breach. So the court found that the contract had already been materially breached and therefore the full amount was due an owing under that. But if it's not an acceleration clause, does it make a difference? I do not believe so because as the district court points out, there is case law basically which states since you have a material breach, the full amount's owed. I have a question about this too. I don't even understand whether or not it's an acceleration clause. I think I'm not understanding why it matters whether this provision, whether we're talking about a material breach which therefore makes the full amount due, allows you to sue for the full amount, or an acceleration clause, whatever we're calling it. I don't understand why that matters. I thought just as a general rule of bankruptcy law, but maybe I'm wrong. You tell me if I'm wrong. If you owe a non-contingent fixed sum, whatever it was, $425,000 less the credits, and you owe that amount when someone petitions. I'm sorry, the debtor owes that amount when it petitions. I thought there is a claim in that amount. It's a non-contingent debt. And it doesn't matter that part of it wasn't due on the payment plan. I thought you are at least entitled to a claim against the estate for the full amount. Is that not right? I agree with that, Your Honor. All right. Are there any other areas that the court would like me to address or hear about? Thank you very much. All right, thank you. And I'll cede the rest of my time then. Thank you. Mr. DeVita, you've got some time for rebuttal. In the last few minutes I have, I'd like to address the last point. Why does it matter whether there's an acceleration clause? If this was a suit on a note, when you sue on a note, you are really on a debt. You can really only bring suit for each installment that's due at a time. That's basic debt law. Like, for example, if you miss one payment on a mortgage, the mortgage company, unless there's an acceleration clause, can only sue for that amount that was owed for that month, $1,000. The only thing that allows them to try to collect the whole sum is the acceleration clause. And the clause basically says, I've got an example. So your understanding is that under the bankruptcy code, if I am owed $5,000 and it's getting paid off a little bit at a time, and then the person who owes me the $5,000 declares bankruptcy, my claim is only for the amount that is past due. I have given up. Like, by declaring bankruptcy, that's it. You don't owe the rest of the money anymore. I don't think that's how bankruptcy works. It's more how you calculate what's owed. But I guess I'm saying I don't see why it matters how much is already owed. If it's a non-contingent debt, you do owe the whole amount. Like, where in the bankruptcy code does it say you only have a claim for the amount that's already past due or matured? I don't. Well, once again, I guess the analogy, whatever the debt amount is has to derive ultimately from whatever the state loan part of it was. And so my argument would be that at the time, there were still, I think it was like 70 payments due under the note. And so in order to try to figure out what was actually due at the time the bankruptcy was filed, was it the entire sum? I don't think so because if you treat it as a note, the only thing that would have been due would have been the payments that had been missed up until the time the bankruptcy was filed. It wouldn't be the whole thing because they were not yet due under the note. I don't think so. So what happens to the rest of it? I mean, so does that just vanish? I mean, the issue here is whether it's dischargeable. And whether it's due yet or not, how does that affect whether it's dischargeable or not? I think it's discharged because it's not a valid part of the claim at that point. If they had waited and filed suit when the whole thing was matured, they could claim the whole amount. But it wasn't actually due. How can they claim as money owed something which is not yet due? It's certainly not due under state law. Counsel, in your brief, I'm just not sure bankruptcy works that way. So I tried to find it in the statute, and your brief cites a section that actually says the opposite, that you allow the claim unless it's unenforceable for a reason other than because such claim is unmatured. The only thing that is excluded because it hasn't matured yet is interest payments. So do you have a different citation, one that says what you're saying and not the opposite? Well, 11 U.S.C. 502 does prevent claims which are unmatured from being part of it. No, it doesn't. It prevents claims for unmatured interest. And then it prevents certain other claims so long as the reason is not that it's unmatured. They're basically saying the fact that it's unmatured is not a reason to exclude it unless it's interest. Well, so I think that certainly takes care of the interest portion of it. I guess my basic point is that you have whatever you have, as you claim by the judgment. In a contract suit, you would have whatever you recovered at law in a contract lawsuit as being your claim. If they had filed suit and had gone to judgment, they could never have claimed the full amount. So I think what you've really got to look at is what could they actually be claiming at that point. They certainly couldn't claim anything more than the payments that had been missed. They certainly couldn't claim – if it had been brought in court and brought to a full judgment, they could never have gotten the full sum of the amount. All they could have sued for was what was not paid up to that point because there's no acceleration cost. Acceleration cost is the only thing that gives them the right to claim the whole amount. If I could just say one other thing real quick. Evidentially, there is still one other issue about the evidence in this case. The sole claim – the claim for damage was based on a summary. I was never given the original documents underlying the summary. It was all hearsay. If they had brought this in court, they would have had to bring in custodians and records. They never did anything about that. In order to even get to this court, they have to produce valid evidence. What about the underlying documents would have been hearsay? Well, first of all, I could have compared that to the summary they're offering to see if they were accurate. That's different from whether or not the underlying documents are hearsay. For example, in a personal injury lawsuit, if you want to bring in a medical donor, you have to bring in the custodian and records to establish that this was a record kept and may or may not have been in the course of business. I never got those records, A. And B, the summary as a whole was completely hearsay. There's nothing in there that a witness ever testified to. It's just something that Mr. Asin and his client sat down in the offices and said, well, what do you think this is? There was never an actual witness who came to court and said, well, this is a valid claim. I think I was hearsay. And like I said, if you're going to introduce a summary, give me the documents. Give me the documents that's based on the evidence. Thank you very much. We'll come down and greet counsel, and then we'll hear our next case.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Kenneth D. Bell